No. 89-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

     Plaintiff and Respondent,

    v.

RODNEY ALLEN WEST,

     Defendant and Appellant.



APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Larry D. Mansch and David E. Stenerson,
        Public Defender's Office, Missoula, Montana

    For Respondent:

        Honorable Marc Racicot, Attorney General, and
        Patricia Schaeffer Jordan, Assistant Attorney
        General, Helena, Montana

        Robert L. Deschamps III, County Attorney, and
        Fred Van Valkenburg, Deputy County Attorney,
        Missoula, Montana


Submitted on Briefs: October 11, 1990

Decided: November 15, 1990

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Rodney Allen West was convicted of felony theft and misdemeanor failure to return rented or leased personal property, in a jury trial in the District Court for the Fourth Judicial District, Missoula County. He appeals. We affirm.

The issues are:

1. Did the District Court err by allowing evidence of other crimes in violation of Rule 404(b), M.R.Evid.?

2. Did the court err in ruling West's letter exhibit inadmissible?

3. Did the court err in instructing the jury on accomplice testimony?

On December 5, 1987, a 1986 red Ford pickup truck was reported stolen from the lot of Karl Tyler Chevrolet in Missoula, Montana. Two salesmen thought they had seen the truck on the lot about two weeks earlier, but the last verifiable date it was on the lot was September 24, 1987. The pickup was valued at $9,000.

On March 26, 1988, the chief of police at St. Ignatius, Montana, discovered a red Ford pickup cab dumped near a road. The vehicle identification number had been torn off, but part of the number was identified from indentations in the dashboard. That partial number matched that of the truck missing from Missoula.

Missoula law enforcement officers began an investigation into purchases by area automobile salvage yards of other parts which could have been from the missing truck. They discovered that on

November 16, 1987, Ace Auto Salvage bought a Ford transfer case and transmission from a woman, Leslie Galarneau, and two men. On November 25, 1987, Ace bought a Ford engine and axles from a Bill Harris. On November 30, 1987, AC Auto Recycling bought two red truck doors from a Bill Harris. On December 18, 1987, Ace bought a red tailgate from Kent Hite, one of the two men and a woman who had come in with the engine. The vehicle identification number of the stolen truck was found on the engine and on the transfer case.

St. Ignatius police officers knew that West had a history of vehicle thefts and that he lived on the road where the Ford cab had been found. They also discovered that Leslie Galarneau lived with West. A red pickup box had been seen next to West's garage. In August 1988, a detective with the Missoula police department obtained a search warrant for West's residence. He found red paint fragments and pieces of red plastic and foam in the garage which matched pieces missing from the pickup cab. He also found a videotape, "The Outlaw Josey Wales," which, along with a VCR, had been stolen from a Missoula video rental store in October 1987. The movie and VCR had been rented to "Bill Harris," who had given a fictitious address.

West was charged with felony theft of the truck and with felony failure to return the rented videotape and VCR. At trial, the State produced an I.D. card from the Idaho Transportation Department. It was issued to "Bill Harris" but bore a photograph of West. The card had the same Social Security number and address

3

that had been given to the automobile salvage yards. A handwriting analyst testified that it was probable that West had signed the Harris I.D. card, the checks from the salvage yards to "Bill Harris," and the video rental agreement.

West presented alibi witnesses as to his whereabouts on the day the Idaho I.D. was issued, the day the videotape and VCR were rented, and during the time in which the truck was stolen. Kent Hite testified that he had not received the tailgate he sold from West. The jury found West guilty as charged on the truck theft and, as to the videotape and VCR, guilty of the lesser included offense of misdemeanor failure to return rented or leased property.

I

Did the District Court err by allowing evidence of other crimes in violation of Rule 404(b), M.R.Evid.?

Rule 404(b), M.R.Evid., provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In Montana, formal notice must be given before evidence of other crimes may be introduced at trial. State v. Just (1979), 184 Mont. 262, 602 P.2d 957.

In this case, the court issued an order in limine that no reference was to be made at trial to West's criminal record.

4

Before trial, however, the court and counsel also discussed the State's intent to use the testimony of West's probation officer and certain documents she possessed containing West's handwriting as evidence that he was the person who had signed "Bill Harris" on the Idaho I.D. card and on the checks from the salvage yards.

The testimony of the probation officer, Cheryl Thornton, and the documents introduced in connection with her testimony were sanitized at trial. Her occupation was not identified, she stated only that West was her "client," and all references to probation were deleted from the documents. Her testimony and those documents are not raised as grounds for appeal. Rather, the basis for this issue on appeal is the prosecution's reference to her in closing argument as "Cheryl Thornton, [West's] probation officer." No objection was made at that time. West now argues that the reference violated the order in limine, the Just requirements, and Rule 404(b), M.R.Evid.

Several witnesses for the defense let it slip that West had been in prison before. In answer to a question about how long her daughter and West had been married, Leslie Galarneau's mother said, "God, when he got out of prison, he come home. I don't remember how long." Kent Hite testified that he was able to recall the date he went to Missoula with West to hock a rifle (the same day the videotape and VCR were rented) because "They tried to violate Rod West for hocking that rifle on October 5th."

Section 46-20-701, MCA, provides that no cause shall be reversed by reason of trial error against a criminal defendant unless the record shows that the error was prejudicial to the defendant. By the time the State's closing argument was made, several references had been made by West's witnesses to his criminal record. While we do not approve of it, we hold that the identification in the State's closing argument of witness Cheryl Thornton as West's probation officer did not prejudice the defense and is not reversible error.

II

Did the court err in ruling West's letter exhibit inadmissible?

The defense attempted to introduce into evidence a letter to Leslie Galarneau dated December 1987 and signed by Rod West, and an envelope postmarked December 22, 1987, at Redding, California. The letter indicated that West had been in California for approximately a month. Leslie Galarneau's mother testified that she picked up the mail including the envelope just before Christmas in December 1987. However, she could not testify that the letter arrived inside the envelope because, as she said, she does not read her daughter's mail. Leslie Galarneau did not testify at trial.

The District Court ruled that in the absence of proof that the letter arrived inside the envelope, the evidence was irrelevant and inadmissible. West claims that this was error.

6

A threshold requirement for admission of a document into evidence is authentication or identification. Rule 901(a), M.R.Evid., provides:

> The requirement of authentication or iden-
> tification as a condition precedent to admis-
> sibility is satisfied by evidence sufficient
> to support a finding that the matter in ques-
> tion is what its proponent claims.

Without any testimony that the letter arrived inside the envelope, there is no proof that the letter was mailed by West from Redding, California, on December 22, 1987. We agree with the District Court that, absent such testimony, the letter and envelope were inadmissible because there was no evidence that they were what their proponent, West, claimed. We hold that the court did not err in ruling the letter exhibit inadmissible.

## III

Did the court err in instructing the jury on accomplice testimony?

This issue relates not to the form of the instruction on accomplice testimony but to the fact that such an instruction was given at all. West argues that because the State did not connect any of Kent Hite's acts with acts of West, it was error to instruct the jury that it should view the testimony of Kent Hite with distrust if they believed he was an accomplice in the theft of the truck.

In support of his argument, West cites State v. Rodriguez (1987), 228 Mont. 522, 744 P.2d 875. In that case, the defendant was convicted of the theft of a CamCorder. At trial, an alleged accomplice, Art Walker, testified on behalf of the State that he had sold the stolen camera to a pawn shop and had split the proceeds with the defendant. He testified that he did not know the camera was stolen until he went to pick it up from the defendant prior to the sale. This Court held that Walker was not an accomplice with defendant because there was nothing in the record to connect him with the theft of the camera. Rodriguez, 744 P.2d at 877.

In the present case, the alleged accomplice testified for the defense rather than for the State. There were no witnesses to the theft of the truck and there is no direct evidence that Hite was an accomplice in the theft. However, the evidence showed that he was with West when parts from the stolen truck were sold. Hite admitted that he helped West remove a cab from a red truck. The defense presented testimony at trial that at the time the pickup cab was dumped, West was in jail (apparently on other charges). Someone else must have dumped the cab. Also, Hite testified that he was with West on October 5, 1987, the day the videotape and VCR were rented in Missoula.

The jury was instructed that

> Testimony has been presented that the witness
> Kent Hite may be an accomplice in this case.
> . . .

8

> It is a question of fact for the jury to determine from the evidence and from the law as given you by the court whether or not in this particular case the witness Kent Hite was or was not an accomplice within the meaning of the law.

The instruction did not require the jury to find that Hite was West's accomplice. It did require that, if the jury found that Hite was an accomplice, his testimony must be corroborated by other evidence.

Because the trial testimony indicated that West had an accomplice and because Hite is, according to the trial testimony, a likely candidate for that honor, we conclude that the record connects Hite's actions with those of West. We hold that the court did not err in giving the instruction on accomplice testimony.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

9