DA 06-0587

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 14

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TARA ASHMORE,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2006-127
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Jason Marks, Office of the Public Defender, Missoula, Montana

      For Appellee:

      Hon. Mike McGrath, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

      Fred Van Valkenburg, Missoula County Attorney, Kirsten LaCroix,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  June 26, 2007

Decided:  January 22, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Appellant Tara Ashmore appeals the denial of her motion to dismiss in the Fourth Judicial District, Missoula County. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On July 16, 2005, Missoula County Sheriff's Reserve Deputies Jarret Hoke and Audrey Kramer were on a special patrol of the Johnsrud Recreational Area of the Blackfoot River in Missoula County. As Hoke was completing a routine traffic stop on Highway 200, Ashmore drove by at a high rate of speed honking her horn continually. Hoke subsequently stopped her for Unnecessary Use of a Horn or Other Warning Device, a misdemeanor under § 61-9-401(1), MCA.

¶3    During the traffic stop Ashmore was angry and belligerent towards Hoke. Initially, she threw her driver's license and registration towards Hoke, but then handed it to him when he requested she do so. After Hoke had completed the standard driver's license and warrant checks, he returned her identification information to her. As Hoke was explaining to Ashmore why she should not honk her horn excessively while passing an emergency vehicle, Ashmore put her vehicle in drive, acted as though she was about to drive off, and then told Hoke that she "did not want to hear it." Hoke instructed her to take the vehicle out of gear, and informed her that if she did not listen to him, he would give Ashmore a ticket. Ashmore did so, and then proceeded to shower Hoke with obscene expletives, throwing her driver's license, proof of insurance, and registration at Hoke again.

2

¶4 As Hoke was writing Ashmore a citation, she exited her vehicle and started taking pictures of him. Reserve Deputy Scott King, who pulled up and was assisting Hoke, told her to get back in her vehicle. She resisted at first and tried to take more pictures, but soon complied. Hoke then issued her a citation for Unnecessary Use of a Horn or Other Warning Device, and also for Disorderly Conduct, a misdemeanor in violation of § 45-8-101, MCA. Ashmore threw the citation on the passenger seat of the vehicle, directed another obscene expletive towards Hoke, and then, according to the police report, "squealed her tires and held her horn down as she accelerated away from the traffic stop."

¶5 Following a bench trial in Justice Court, Ashmore was convicted of one count of Disorderly Conduct and one count of Unnecessary Use of a Horn or Other Warning Device. She appealed her conviction to the District Court. On appeal she filed a motion to dismiss the Disorderly Conduct charge. Ashmore maintained that her conduct did not violate the statute as a matter of law because only a few people, the police officers, were disturbed by it. The District Court denied her motion to dismiss. After this denial, Ashmore pled guilty and was sentenced pursuant to a plea agreement which preserved her right to appeal. She now timely appeals the denial of her motion to dismiss.

## ISSUE

¶6 We state the issue on appeal as follows: Did the District Court err in denying Ashmore's motion to dismiss?

## STANDARD OF REVIEW

3

¶7 "The grant or denial of a motion to dismiss in a criminal case is a question of law which we review *de novo* on appeal. Our standard of review is plenary, and we determine whether a district court's conclusion is correct." *State v. Pyette*, 2007 MT 119, ¶ 11, 337 Mont. 265, ¶ 11, 159 P.3d 232, ¶ 11.

**DISCUSSION**

¶8 Did the District Court err in denying Ashmore's motion to dismiss?

¶9 Ashmore maintains the District Court erred in denying her motion to dismiss. She asserts that the Disorderly Conduct statute "requires at a minimum that a defendant engage in behavior that disturbs a number of people." Ashmore asserts there were no witnesses who observed her behavior, and that of the three reserve deputies who were involved in the traffic stop—Hoke, Kramer, and King—only Hoke and Kramer actually witnessed the conduct allegedly giving rise to the Disorderly Conduct violation. Accordingly, Ashmore maintains the State failed to "present any evidence establishing probable cause that Ms. Ashmore disturbed the peace by disturbing more than a few people with her conduct." Ashmore claims that her interpretation of § 45-8-101(1), MCA, is supported by the Criminal Law Commission Comments to the Disorderly Conduct statute and our decision in *Kleinsasser v. State*, 2002 MT 36, 308 Mont. 325, 42 P.3d 801.

¶10 The State urges us to affirm the District Court's decision. The State asserts that "[n]o Montana decision has held specifically that a certain minimum number of people must be affected in order for behavior to 'disturb the peace' within the meaning of the disorderly conduct statute." The State argues that the plain language of the statute makes

4

disturbance of the peace an element of the disorderly conduct, but does not otherwise contain any numerical requirement of how many "others" must be affected by the defendant's conduct in order to give rise to a violation of the statute. The State maintains that "the number of people affected is not, on its own, determinative of whether 'the peace' is disturbed. Rather, it is only one factor among several that should be considered." The State asserts that this position is supported by our prior decisions, including *City of Billings v. Batten*, 218 Mont. 64, 705 P.2d 1120 (1985), *State v. Turley*, 164 Mont. 231, 521 P.2d 690 (1974), and *State v. Lowery*, 233 Mont. 96, 759 P.2d 158 (1988). Additionally, the State asserts that *Kleinsasser* is distinguishable. Accordingly, the State maintains that the allegations in the affidavit demonstrated probable cause sufficient to support a finding that Ashmore violated the Disorderly Conduct statute, and that the District Court's denial of her motion to dismiss should be affirmed.

¶11 In analyzing these arguments, we first turn to the relevant portions of the Disorderly Conduct statute under which Ashmore was charged. They read as follows:

> (1) A person commits the offense of disorderly conduct if he knowingly disturbs the peace by:
> (a) quarreling, challenging to fight, or fighting;
> (b) making loud or unusual noises;
> (c) using threatening, profane, or abusive language . . . .

Sections 45-8-101(1)(a) through (c), MCA.

¶12 As the State correctly notes, our task in interpreting statutes is "simply to ascertain and declare what is in terms or in substance contained [in the statute], not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Here, however, there is a disparity between the plain language of the statute and the Criminal

5

Law Commission Comments which provide guidance on how this statute is to be applied. The relevant portions of the Comments read as follows:

> The intent of the provision is to use somewhat broad, general terms to establish a foundation for the offense and leave the application to the facts of a particular case. Two important qualifications are specified in making the application, however. First, the offender must knowingly make a disturbance of the enumerated kind, and second, the behavior must disturb "others." It is not sufficient that a single person or a very few persons have grounds for complaint.

¶13 The statute, on the other hand, does not specify that conduct must disturb "others," or otherwise indicate that conduct affecting "a single person or a very few persons" is insufficient to give rise to a violation of the statute. In fact, the statute only requires that a defendant "knowingly disturb the peace" by committing one of the acts enumerated in subsections (a) through (j) of the statute, none of which contains a numerical requirement.

¶14 The disparity between the Comments and the plain language of the statute itself raises the question of whether it is possible to "disturb the peace" by specific acts that affect only one, or a few persons, or whether greater numbers of persons must be affected by the enumerated acts before a violation of the statute can take place. The State urges us to ameliorate this disparity by giving little if any weight to the Commission Comments, given that this phraseology, i.e., a reference to "others," does not appear anywhere in the statute itself. Ashmore, however, asserts that this course is foreclosed to us, given our holding in *Kleinsasser* where we cited approvingly to these portions of the Commission Comments.

6

¶15   A review of our prior decisions under this statute shows that, in spite of the language in the Comments, we have never adopted a strict numerical requirement respecting how many people need be affected by conduct before it "disturbs the peace." As we noted in *Lowery*,

> The criminal law commission comments to § 45-8-101, MCA, state that, for a charge of breach of the peace, "[i]t is not sufficient that a single person or a very few persons have grounds for complaint." However, in *City of Billings v. Batten*, 705 P.2d 1120, 42 St.Rep. 1398, defendant was convicted of using "fighting words" toward his neighbor in the presence of the neighbor's family and several passers-by and within the hearing of other neighbors. The total number of persons present was about ten. In *City of Whitefish v. O'Shaughnessy* (Mont. 1985), 704 P.2d 1021, 42 St.Rep. 928, defendant was convicted of using "fighting words" in the presence of two friends and a police officer.

*Lowery*, 223 Mont. at 100, 759 P.2d at 160.

¶16   Similarly, in *Batten*, we noted the following:

> Although we have never decided how many people must be disturbed before the peace is disturbed, one Montana case involving the crime of breach of the peace, former § 94-3560, R.C.M. 1947, provides guidance. In *State v. Turley* (1974), 164 Mont. 231, 521 P.2d 690, Turley's conviction for disturbing the peace was upheld. Section 94-3560, R.C.M. 1947, prohibited disturbances of the peace by "loud or unusual noise or tumultuous or offensive conduct or threatening, quarrelling, challenging to fight or fighting." Turley was convicted under this statute when only he, his wife, and a third party were present to witness his conduct.

*Batten*, 218 Mont. at 71, 705 P.2d at 1125.

¶17   As these cases demonstrate, we have focused our analysis not upon numbers of persons affected, but rather upon whether the defendant knowingly disturbed the peace by committing one of the acts enumerated in the statute. While the number of individuals affected by the conduct may play a role in whether the peace has been disturbed, it is not

7

necessarily a dispositive factor. Instead, determination of whether the peace has been disturbed should turn on "the application [of the statute] to the facts of a particular case."

¶18 This is, in fact, the approach we applied in *Kleinsasser*, where we considered whether officers had particularized suspicion to justify an investigative stop due to an alleged violation of § 45-8-101, MCA. In that case, an officer observed Kleinsasser's car parked off the side of the road around 10 p.m. at night, and saw an individual near the passenger door of the car urinating off the side of the road. *Kleinsasser*, ¶ 3. The officer pulled over and conducted an investigative stop of Kleinsasser, suspected he was under the influence of alcohol, and when Kleinsasser refused a preliminary breath test, arrested him for driving under the influence of alcohol. *Kleinsasser*, ¶ 6. The officer seized Kleinsasser's license and it was later suspended.

¶19 Kleinsasser challenged the suspension of his license, but the district court denied his petition to have his license reinstated. Kleinsasser appealed the district court's decision, and argued that his license had been illegally seized because the officer lacked particularized suspicion to justify the stop, and that the observed behavior did not violate the laws of Montana. *Kleinsasser*, ¶¶ 14, 15. The State argued that the observed behavior of Kleinsasser constituted a violation of the Disorderly Conduct statute, in particular § 45-8-101(i), MCA, and that the officer did have particularized suspicion justifying the stop. *Kleinsasser*, ¶ 15.

¶20 We disagreed with the State, and reversed the District Court, finding that the observed conduct of Kleinsasser did not constitute a violation of § 45-8-101(i), MCA. Thus, there was no particularized suspicion justifying the investigative stop. The

8

proscribed act described in subsection (i) of the Disorderly Conduct statute reads as follows: "creating a hazardous or physically offensive condition by any act that serves no legitimate purpose . . . ." Section 45-8-101(i), MCA. We found that Kleinsasser's conduct did not violate this statute for several reasons. On the one hand, we concluded that Kleinsasser's conduct did not create a hazardous condition, and further that it served a legitimate purpose. Moreover, we determined that Kleinsasser's act of urinating, given the time, manner, and conditions under which it occurred, was not "offensive." After quoting the Commission Comments cited above at ¶ 12, we concluded as follows:

> In the present case, the incident occurred in the dark of the night, in a rural location where, as Officer Palmer testified, there were no overhead lights of any kind and there was no other traffic around at the time. Moreover, there was no evidence that the behavior disturbed anyone other than Officers Leasure and Palmer, and neither officer was so disturbed by the behavior that they considered giving the individual a citation.

*Kleinsasser*, ¶ 21.

¶21 Contrary to Ashmore's assertion, *Kleinsasser* does not stand for the proposition "that more than a few people must be disturbed by the alleged conduct" to constitute a disturbance of the peace in violation of § 45-8-101, MCA. Rather, the Court in *Kleinsasser* continued our prior practice of evaluating whether the commission of one of the enumerated acts in the statute led to a disturbance of the peace by the defendant, based upon "the facts of a particular case." Aside from our quotation of the Commission Comments, nowhere in *Kleinsasser* did we imply or intimate that Kleinsasser's conduct was not a violation of the statute solely because only two police officers witnessed it. Instead, we found the conduct was not "offensive" based on the fact that only two police

officers witnessed it, *and* the fact that there "was no evidence that the behavior disturbed anyone other than Officers Leasure and Palmer, *and neither officer was so disturbed by the behavior that they considered giving the individual a citation.*" *Kleinsasser*, ¶ 21. (Emphasis added). Thus, our holding in that case was based on the fact that neither the officers, nor anyone else, was offended by the conduct, given the time, place, and manner of its occurrence. Thus, the conduct failed to satisfy any of the enumerated acts in the statute, particularly those in subsection (i).

¶22 This case, however, is distinguishable from *Kleinsasser*. The complaint filed against Ashmore alleges that Ashmore violated the Disorderly Conduct statute when she:

> (1) Quarreled, challenged to fight or fought, by calling the police officer a "cocksucker" and/or other profanities, by resisting instructions of police officers to remain in or return to a vehicle, and by throwing items at officers of the law.
> (2) Made loud or unusual noises by honking her horn excessively when unnecessary and yelling at officers of the peace.
> (3) Used threatening, profane or abusive language, including but not limited to "fucking," and "cocksucker" on one or more occasions, directed at officers of the peace.

¶23 We conclude that Ashmore's conduct falls under the proscriptions set forth in the acts enumerated in subsections (a) through (c) of the Disorderly Conduct statute. Consequently, Ashmore's conduct does not need to be deemed "offensive," as was required under subsection (i) in *Kleinsasser*, but only needs to meet the requirements listed in subsections (a) through (c) of the statute—namely that Ashmore "quarrel[l], challeng[e] to fight, or fight[] . . . mak[e] loud or unusual noises . . . [or] us[e] threatening, profane, or abusive language . . . ." Sections 45-8-101(1)(a) through (c), MCA. Ashmore's conduct more than satisfies these requirements.

¶24 Accordingly, the only question is whether these proscribed actions, when directed solely at police officers, could be found by a trier of fact to "disturb the peace," and thus give rise to a violation of § 45-8-101, MCA. We hold that they can, and that nothing in our prior precedent under the Disorderly Conduct statute, including *Kleinsasser*, is inconsistent with this conclusion. Thus, we affirm the District Court's denial of Ashmore's motion to dismiss.

## CONCLUSION

¶25 For these reasons, the District Court's Order is affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

11