
DA 13-0525

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 98

CITY OF BILLINGS,

    Plaintiff and Appellee,

  v.

LORENA FATOUROS NELSON,

    Defendant and Appellant.


APPEAL FROM:  District Court of the Thirteenth Judicial District,
        In and For the County of Yellowstone, Cause No. DC 13-328
        Honorable Gregory R. Todd, Presiding Judge


COUNSEL OF RECORD:

    For Appellant:

    Lorena Fatouros Nelson, self-represented, Billings, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

    Brent Brooks, Billings City Attorney, Stacy Tenney, Deputy Billings City Attorney, Billings, Montana


           Submitted on Briefs: March 19, 2014
                Decided: April 15, 2014

Filed:

          _____
                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Lorena Fatouros Nelson appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, affirming her conviction of disorderly conduct in the Municipal Court of the City of Billings.

¶2      Nelson presents the following issues for review:

¶3      *Issue One: Whether the disorderly conduct statute, § 45-8-101, MCA, requires proof that the peace of more than one person was disturbed.*

¶4      *Issue Two: Whether Nelson's speech constituted "fighting words."*

¶5      *Issue Three: Whether Nelson's constitutional rights were violated when the responding officer reported Nelson had refused to speak to him.*

¶6      *Issue Four: Whether the Municipal Court erred by not allowing Nelson to replay audio recordings that had already been admitted into evidence and requiring authentication of the McDonald's receipt.*

¶7      *Issue Five: Whether the Municipal Court erred by considering the victim's age during sentencing.*

¶8      *Issue Six: Whether Nelson's right to a fair trial was violated because the Municipal Court Judge Pro Tempore is a criminal defense attorney.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶9      On the afternoon of October 29, 2012, Nelson was the passenger in a vehicle driven by her daughter, Joey Jean Oltrogge. Nelson and Oltrogge were returning to Nelson's home near the intersection of Hallowell Avenue and Bruce Lane in Billings after visiting the McDonald's on Southgate Drive. They passed Nelson's 13-year-old neighbor, M.C., walking home from a nearby school. Oltrogge slowed the vehicle next to M.C. Oltrogge raised her middle finger and said, "Fuck you." Nelson said, "Spic bastard." The women then drove away. M.C. continued his short walk home and told his mother what had

2

happened. At 3:51 p.m., M.C.'s mother called 911 to report the incident. Officer Brett Becker responded to the call. M.C. told Officer Becker he was scared by the incident. Officer Becker reported that both M.C. and his mother appeared upset and worried. Officer Becker went to Nelson's home to inquire about the incident. Nelson's husband, Kevin Nelson, opened the door and told Officer Becker, "We're not going to answer any questions." Officer Becker informed the city attorney that Nelson and Oltrogge did not want to talk to him.

¶10 Nelson and Oltrogge were charged with disorderly conduct. They consented to a combined trial and waived their rights to counsel and a jury trial. Nelson and Oltrogge represented themselves in a bench trial before Judge Pro Tempore Lance Lundvall, who also practices as a criminal defense attorney. Officer Becker testified during the prosecution's case in chief that he had not spoken with either Nelson or Oltrogge. On cross-examination, he explained his earlier report by saying, "I wrote that they stated they wouldn't answer any questions, and I guess I should have just wrote that the person that answered the door said that they don't want to answer any questions." At the close of the prosecution's evidence, Nelson moved to dismiss the charges, arguing "you can't disturb the peace of one person." The Municipal Court took the motion under advisement.

¶11 Nelson and Oltrogge presented their defense. Nelson claimed she and Oltrogge had not seen M.C. that day, because they were at McDonald's on Southgate Drive, approximately two miles from the intersection of Hallowell Avenue and Bruce Lane, when the incident allegedly occurred. After testifying to its authenticity, Nelson offered as

3

evidence a receipt from McDonald's, time-stamped 3:41 p.m.[1]  Nelson claims the charges

were fabricated because she kept the "bark log" in an ongoing neighborhood dispute over a

barking dog belonging to M.C.'s family.

¶12    After Nelson and Oltrogge concluded their presentation of evidence, they presented

additional arguments on the motion to dismiss.   Nelson claimed her speech was

constitutionally protected and did not constitute "fighting words," because she remained in

the vehicle and therefore was not face-to-face with M.C.  The City also presented additional

legal authorities.  The Municipal Court denied the motion to dismiss.

¶13    The Municipal Court found Nelson and Oltrogge guilty of disorderly conduct and

proceeded to sentencing.  Nelson and Oltrogge were each ordered to pay a $100 fine and

serve 10 days in jail.  The jail time was suspended for a period of six months.  The Municipal

Court explained the sentence as follows:

> I do have to say I might feel differently if all the parties here and all the folks
> involved were adults, but they're not.  We've got a 13-year-old boy who stood
> on this witness stand and was obviously very nervous . . . .  [I]f, as adults, we
> are directing that kind of language towards children, I don't know what kind
> of example and what we are showing to our children.  That's problematic for
> me in this case.

¶14    Nelson appealed to the District Court.  She argued the Municipal Court erred when it

denied the motion to dismiss, repeating her arguments that her speech was constitutionally

protected and that one cannot be convicted of disorderly conduct for disturbing the peace of

only one person.  She also claimed her Sixth Amendment rights were violated when Officer

---

[1] The receipt shows purchase of one large Diet Dr. Pepper with "light ice," one large caramel frappe, and two chipotle barbecue snack wraps, grilled.  The order was paid with a gift card.  Nelson

4

Becker told the city attorney she had refused to speak with him, when in fact Officer Becker had only spoken to her husband. She argued the Municipal Court improperly considered the victim's age. She also objected to the manner in which the Municipal Court allowed her to present evidence. In a 15-page Order, the District Court affirmed the Municipal Court conviction. This appeal followed.

## STANDARD OF REVIEW

¶15 On appeal from a municipal court, the district court functions as an intermediate appellate court. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. When reviewing the decision of the district court in such an appeal, we review the case as if the appeal had originally been filed in this Court, applying the appropriate standard of review. *Cantu*, ¶ 10.

¶16 The interpretation and construction of a statute is a question of law, which we review de novo. *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874. The denial of a motion to dismiss is also reviewed de novo. *State v. LeMay*, 2011 MT 323, ¶ 27, 363 Mont. 172, 266 P.3d 1278. We exercise plenary review of constitutional issues. *State v. Dugan*, 2013 MT 38, ¶ 14, 369 Mont. 39, 303 P.3d 755. We review evidentiary rulings for abuse of discretion. *State v. Daniels*, 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623. We generally will not address issues raised for the first time on appeal. *Weaver v. State*, 2013 MT 247, ¶ 38, 371 Mont. 476, 310 P.3d 495.

---

and Oltrogge also submitted a photocopy of the front and back of the $25 gift card, which had a remaining balance of $16.13.

DISCUSSION

¶17    *Issue One: Whether the disorderly conduct statute, § 45-8-101, MCA, requires proof that the peace of more than one person was disturbed.*

¶18    The disorderly conduct statute provides, in relevant part: "A person commits the offense of disorderly conduct if the person knowingly disturbs the peace by . . . using threatening, profane, or abusive language . . . ." Section 45-8-101(1)(c), MCA. The Criminal Law Commission Comments to this section state:

> The intent of the provision is to use somewhat broad, general terms to establish a foundation for the offense and leave the application to the facts of a particular case. Two important qualifications are specified in making the application, however. First, the offender must knowingly make a disturbance of the enumerated kind, and second, the behavior must disturb "others." It is not sufficient that a single person or a very few persons have grounds for complaint.

Nelson relies on the Comments to argue she cannot be convicted of disturbing the peace, because she disturbed only M.C. She says M.C. produced no evidence that anyone else heard the remarks or witnessed the incident, and cites M.C.'s testimony that Nelson and Oltrogge did not "holler" their remarks.

¶19    We have previously noted that the Comments conflict with the plain language of the statute, which "does not specify that conduct must disturb 'others,' or otherwise indicate that conduct affecting 'a single person or a very few persons' is insufficient to give rise to a violation of the statute." *State v. Ashmore*, 2008 MT 14, ¶ 13, 341 Mont. 131, 176 P.3d 1022. In *Ashmore*, the defendant moved to dismiss charges of disorderly conduct on the grounds that her conduct had disturbed only two police officers. *Ashmore*, ¶ 5. We concluded our precedent did not reflect adoption of a "strict numerical requirement."

6

*Ashmore*, ¶ 15.  Accordingly, we affirmed the district court's denial of the defendant's motion to dismiss.  *Ashmore*, ¶ 24.

¶20    As we noted in *Ashmore*, it is the role of this Court when interpreting a statute "simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA; *Ashmore*, ¶ 12.  The disorderly conduct statute does not require evidence that more than one person was disturbed.  Section 45-8-101, MCA; *Ashmore*, ¶ 13.  The statute requires only that the defendant knowingly disturbed the peace by committing one of the enumerated acts, including "using threatening, profane, or abusive language."  Section 45-8-101(1)(c), MCA; *Ashmore*, ¶ 13.  There was sufficient evidence to support the conclusion that Nelson and Oltrogge disturbed the peace by directing profane and abusive language toward M.C. from their vehicle on a public street.  Section 45-8-101(1)(c), MCA; *Ashmore*, ¶ 24.

¶21    Nelson also argues the Municipal Court erred by taking her motion under advisement and allowing the City to present additional legal authorities, rather than making an immediate ruling.  It is the duty of a judge to correctly interpret the law, not to make hasty and uninformed judgments.  The Municipal Court performed its function properly by evaluating the relevant authorities and rendering a thoughtful ruling.  The Municipal Court did not err when it denied Nelson's motion to dismiss.

¶22    *Issue Two: Whether Nelson's speech constituted "fighting words."*

¶23    The language of the disorderly conduct statute prohibiting use of "threatening, profane, or abusive language" has been construed to apply only to "fighting words."  Section 45-8-101(1)(c), MCA; *State v. Robinson*, 2003 MT 364, ¶ 9, 319 Mont. 82, 82 P.3d

7

27. "Fighting words" are "'those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" *City of Whitefish v. O'Shaughnessy*, 216 Mont. 433, 438, 704 P.2d 1021, 1024 (1985) (quoting *Chaplinsky v. N.H.*, 315 U.S. 568, 572, 62 S. Ct. 766, 769 (1942)). "Fighting words" are characterized by their tendency to provoke a violent response in the listener. *Dugan*, ¶ 20 (citing *Chaplinsky*, 315 U.S. at 573, 62 S. Ct. at 770). They are excluded from the protections of the First Amendment because they form "'no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *O'Shaughnessy*, 216 Mont. at 438, 704 P.2d at 1024 (quoting *Chaplinsky*, 315 U.S. at 572, 62 S. Ct. at 769). Racial slurs, including "spic," may be considered "fighting words." *See Dugan*, ¶ 18 ("'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution . . . .'") (quoting *Chaplinsky*, 315 U.S. at 572, 62 S. Ct. at 769); *State v. Hoshijo*, 76 P.3d 550, 565 (Haw. 2003) (quoting *Taylor v. Metzger*, 706 A.2d 685, 691 (N.J. 1998) ("The experience of being called 'nigger,' 'spic,' 'Jap,' or 'kike' is like receiving a slap in the face. The injury is instantaneous.")). The potential to elicit an immediate violent response exists only where the communication occurs face-to-face or in close physical proximity. *Dugan*, ¶¶ 37-43. Telephone communications are not included within the fighting words doctrine, because there is no possibility the listener will react with immediate violence against the speaker. *Dugan*, ¶¶ 42-43.

¶24 Nelson argues the words "spic bastard," though "harsh, co[a]rse, hurtful, vulgar, unpleasant, distasteful, or rude," are not fighting words. She also argues she was not

8

face-to-face with M.C. because she remained inside her vehicle. The use of a racial slur is the type of speech that would, by its very utterance, inflict injury and tend to incite a breach of the peace. *See Dugan*, ¶ 18; *Hoshijo*, 76 P.3d at 565. The fact that Nelson and Oltrogge were in a car does not mean their speech could not have incited an immediate violent response from a listener on the street. *See Dugan*, ¶¶ 37-43. M.C. was close enough to recognize the women's faces and to hear their words clearly, even though they did not "holler" them. Nelson's use of the term "spic bastard" constituted fighting words and was not constitutionally protected.

¶25 *Issue Three: Whether Nelson's constitutional rights were violated when the responding officer reported Nelson had refused to speak to him.*

¶26 Nelson argues her constitutional rights were violated by Officer Becker's statement that Nelson had refused to speak to him, when it was her husband who told Officer Becker the family did not wish to answer any questions. Nelson claims Officer Becker's failure to speak with her during his investigation violated her Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Nelson claims the warrant was improperly issued on the basis of this false statement. She also argues Officer Becker's statement was perjury and deprived her of her right to a fair trial.[2]

¶27 Nelson's claims are without merit. M.C.'s statement identifying Nelson and Oltrogge and describing Oltrogge's vehicle was sufficient to establish probable cause for a warrant, regardless of Officer Becker's statements about his attempt to contact Nelson and Oltrogge. *State v. Sor-Lokken*, 246 Mont. 70, 76, 803 P.2d 638, 642 (1990) (probable cause established

by witness statements describing defendant and defendant's license plate). Nelson was notified of the nature and cause of the accusation by the complaint, which described the incident in detail, and the warrant, which identified the offense as disorderly conduct. Nelson did not have the right to be notified of the charges against her before those charges had been filed. *See Sor-Lokken*, 246 Mont. at 76, 803 P.2d at 642 (defendant does not have a right to be present when charges are filed).

¶28 Nelson and Oltrogge were permitted to cross-examine Officer Becker extensively about his earlier statement that they had refused to speak with him. The circumstances of Officer Becker's attempted interview were fully explained at trial, and there is no evidence he committed perjury. While a defendant's invocation of the right to remain silent may not be used against him or her at trial, *State v. Wagner*, 2009 MT 256, ¶ 15, 352 Mont. 1, 215 P.3d 20, that did not occur here. Kevin Nelson's refusal was not equivalent to an invocation of Fifth Amendment rights by Nelson or Oltrogge. *Moran v. Burbine*, 475 U.S. 412, 433 n.4, 106 S. Ct. 1135, 1147 n.4 (1986) (privilege against self-incrimination "can only be invoked by the individual whose testimony is being compelled."). Officer Becker did not claim at trial that Nelson or Oltrogge had refused to speak with him, and the prosecution made no reference to his earlier report. Rather, Nelson raised the issue for the first time on cross-examination, asking, "[W]hy would you write that you talked to us?" Nelson's constitutional rights were not violated by Officer Becker's initial report of his investigation.

---

[2] Although Nelson specifically invokes only the Sixth Amendment, she also raises issues pertaining to the Fourth and Fifth Amendments, which we address as such.

¶29 *Issue Four: Whether the Municipal Court erred by not allowing Nelson to replay audio recordings that had already been admitted into evidence and requiring authentication of the McDonald's receipt.*

¶30 Nelson argues the Municipal Court erred by not allowing her to replay audio recordings of the 911 call and Officer Becker's interview with M.C. and his mother. The recordings had already been played by the City and entered into evidence. Nelson was free to refer to statements made in the recordings when cross-examining M.C. or during argument. Playing the recordings repeatedly would have served no purpose other than to slow down the proceedings. *McAndrews v. Schwartz*, 164 Mont. 402, 411, 523 P.2d 1379, 1385 (1974) (replay of testimony "added nothing new to the case"). The Municipal Court did not abuse its discretion by refusing to allow Nelson to play the recordings a second time.

¶31 Nelson also argues the Municipal Court erred by requiring Oltrogge to act as her attorney for the purpose of authenticating the McDonald's receipt. The Municipal Court did not require Oltrogge to question Nelson. The Municipal Court informed Nelson the receipt would have to be authenticated before it could be received as evidence. The Municipal Court advised Nelson she could testify to the authenticity of the receipt herself, if she chose, but made clear she was not required to testify. Nelson was also free to present her authenticating testimony without questioning by Oltrogge. She was not entitled, however, to present unauthenticated evidence. M. R. Evid. 901; *State v. West*, 245 Mont. 298, 302, 800 P.2d 1047, 1050 (1990). The Municipal Court did not abuse its discretion by requiring authentication of the McDonald's receipt.

11

¶32 *Issue Five: Whether the Municipal Court erred by considering the victim's age during sentencing.*

¶33 Nelson argues the Municipal Court improperly convicted her on the basis of M.C.'s age. The Municipal Court referred to M.C.'s age after the verdict had been rendered. The record gives no indication that the Municipal Court considered his age prior to the verdict. During sentencing, a court "may consider 'any matter relevant to the disposition' of an offender." *State v. Hill*, 2009 MT 134, ¶ 27, 350 Mont. 296, 207 P.3d 307 (quoting § 46-18-115(1), MCA). The Municipal Court explained its sentence by indicating that a different sentence may have been appropriate if the parties had all been adults. The Municipal Court was entitled to consider the victim's age as a factor during sentencing. *Hill*, ¶ 27. The Municipal Court did not err.

¶34 *Issue Six: Whether Nelson's right to a fair trial was violated because the Municipal Court Judge Pro Tempore is a criminal defense attorney.*

¶35 Nelson argues that because Judge Pro Tempore Lundvall is a criminal defense attorney, she suspects ex parte communications occurred and favors were exchanged with the City. She offers no factual basis for this belief. She did not raise this argument before either the Municipal Court or the District Court. As this argument is raised for the first time on appeal, we will not address it further. *Weaver*, ¶ 38.

¶36    For the reasons stated above, Nelson's conviction of disorderly conduct is affirmed.


                                        /S/ MIKE McGRATH


We Concur:


/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE