JUDGE WEBB, dissenting.
¶ 37 Because the image that R.C. created depicting L.P. is not in the record and the trial court did not make detailed findings, exactly what it looked like is indeterminable. But for two reasons, my sufficiency review assumes that the image showed L.P.'s face with an adjacent ejaculating penis pointing at his open mouth.[1]
¶ 38 First, L.P. testified that R.C. had taken a picture of him with his mouth open. A student who saw a later version of this image testified that it showed L.P. with a penis drawn "on his face" which was "[p]ointing more towards his mouth." That student also testified that the penis was ejaculating because "there was stuff coming out of it." Another student testified that the image had a penis "[t]owards [L.P.'s] face" and "the penis was [ejaculating] ... because there were ... white lines everywhere."
¶ 39 Second, even if the record leaves any reasoned doubt about exactly what the image depicted-which to my reading it does not-the content of the image must be treated in the light most favorable to the prosecution. People v. Taylor , 131 P.3d 1158, 1164 (Colo. App. 2005).
¶ 40 No one who appears before us suggests that such a sexually explicit image of a minor is innocuous.[2] Even so, the novel question of whether a photograph, (or here, a digital image), as opposed to spoken words, even constitutes fighting words must be answered.[3] If so, the remaining question is whether this particular image was reasonably likely to provoke a violent response by L.P. Because I would answer both questions "yes," I respectfully dissent.
I. For First Amendment Purposes, Does A Digital Image Trigger the Fighting Words Doctrine?
¶ 41 True enough, the picture of L.P. with an ejaculating penis superimposed near to or touching his face does not fit the traditional model of fighting words because no words were included. Still, "one picture is worth a thousand words." People v. Sepeda , 196 Colo. 13, 22, 581 P.2d 723, 730 (1978).
¶ 42 Not surprisingly, then, pictures have legal significance. For example, the law of libel, which also balances First Amendment interests, has long recognized that a photograph can be as defamatory as a printed word. See Knapp v. Post Printing & Publ'g Co. , 111 Colo. 492, 496, 144 P.2d 981, 983-84 (1943) ("A definition of libel which has received general acceptance and approbation is *1114 to be found in 33 American Jurisprudence, page 38, section 3. It reads: 'A libel is a malicious publication, expressed either in printing or writing or by signs and pictures ....' ") (emphasis added). As well, tort law gives effect to pictures. See, e.g. , Ford Motor Co. v. Lemieux Lumber Co. , 418 S.W.2d 909 (Tex. Civ. App. 1967) (holding that sales brochure with pictures of truck capable of crossing streams and ditches and climbing mountains could be construed as an express warranty).
¶ 43 I do not perceive any doctrinal ground on which to avoid balancing the fighting word exception against First Amendment rights merely because a picture is at issue.
¶ 44 Acknowledging that forms of communication other than spoken words may convey fighting words also reflects the evolving nature of how we communicate. Today, communication-especially among the young-has become increasingly digital and visual. See Doninger v. Niehoff , 594 F.Supp.2d 211, 223 (D. Conn. 2009) ("[S]tudents are connected to each other through email, instant messaging, blogs, social networking sites, and text messages."), aff'd in part and rev'd in part , 642 F.3d 334 (2d Cir. 2011).[4]
¶ 45 For these reasons, I would apply the fighting words doctrine to test whether the penis image of L.P. enjoys First Amendment protection.
II. Did the Image of L.P. Constitute Fighting Words?
¶ 46 Everyone would agree that "[t]he unprotected category of speech called 'fighting words' is an extremely narrow one." Johnson v. Campbell , 332 F.3d 199, 212 (3d Cir. 2003). Such words are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire , 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). And "[t]he potential to elicit an immediate violent response exists only where the communication occurs face-to-face or in close physical proximity." City of Billings v. Nelson , 374 Mont. 444, 322 P.3d 1039, 1045 (2014).
¶ 47 But how great must be the risk of a violent response? To determine whether a communication includes fighting words, "the inquiry is not whether a reasonable person 'might' react violently, but instead whether someone in the circumstances of the addressee would likely react violently in the context in which the words were spoken." In re Nickolas S. , 226 Ariz. 182, 245 P.3d 446, 452 (2011). At the same time, whether violence actually occurred is irrelevant, as a matter of law. See State v. Parnoff , 160 Conn.App. 270, 125 A.3d 573, 579 (2015) ("To be considered 'fighting words,' the speech at issue need not actually cause those who hear the speech to engage in 'violent, tumultuous or threatening behavior,' but must have 'the tendency to provoke imminent retaliation' from them." (quoting State v. Szymkiewicz , 237 Conn. 613, 678 A.2d 473, 477-78 (1996) )) (cert. granted in part Nov. 30, 2015).[5]
¶ 48 So, what aspects of this case make such a violent response likely? As the majority recognizes, the context must be considered. Three contextual factors leap out.
¶ 49 First, the record shows that R.C. was in close physical proximity to L.P., who could have immediately retaliated with a violent act. Because of this proximity, displaying the image to L.P. differs from cases dealing with an electronic communication where no contemporaneous, in-person confrontation could have occurred. See *1115 Layshock ex rel. Layshock v. Hermitage Sch. Dist. , 496 F.Supp.2d 587, 602 (W.D. Pa. 2007) ("A 'MySpace' internet page is not outside of the protections of the First Amendment under the fighting words doctrine because there is simply no in-person confrontation in cyberspace such that physical violence is likely to be instigated."), aff'd in part , 650 F.3d 205 (3d Cir. 2011).[6]
¶ 50 Second, a contextual approach requires that the age of the listener be considered. See Svedberg v. Stamness , 525 N.W.2d 678, 684 (N.D. 1994) ("No one would argue that a different reaction is likely if a thirteen-year-old boy and a seventy-five-year-old man are confronted with identical fighting words."); see also Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204 , 523 F.3d 668, 674 (7th Cir. 2008) (adults "can handle such remarks better than kids can").
¶ 51 Yet, the majority concludes that the image does not constitute fighting words because an "average person-even an average fourteen-year-old-would not be expected to fly into a violent rage upon being shown a photo of himself with a penis drawn over it." The majority relies on State v. Tracy , 130 A.3d 196, 209 (Vt. 2015), where the court explained that children are taught to use words "rather than respond to anger and frustration by physically lashing out."
¶ 52 The reasoning in Tracy falls short because it is at odds with capital and life without parole sentencing cases that recognize children's "lack of maturity and ... underdeveloped sense of responsibility," coupled with their vulnerability to outside influences. Roper v. Simmons , 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (quoting Johnson v. Texas , 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) ). These cases also acknowledge that children's characters "are 'not as well formed.' " Graham v. Florida , 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (quoting Roper , 543 U.S. at 569-70, 125 S.Ct. 1183 ).
¶ 53 Consistent with the Supreme Court's observations on the infirmities of youth-as applied to fighting words-at least one court has held that "adolescent schoolchildren, are highly sensitive" and "easily upset by comments," such as those "about their race, sex, etc." Nuxoll , 523 F.3d at 671. This court explained that such comments relate to "major components of [a person's] personal identity" and "can strike a person at the core of his being." Id.[7]
¶ 54 Based on these authorities, I believe that L.P.'s age makes a violent response more-not less-likely than if a similar penis image of an adult had been displayed to the adult. But the contextual inquiry does not end with age.
¶ 55 Third, the calculus of violence ratchets up even higher because some of L.P.'s peers were present and saw the image when R.C. displayed it to him. Cf. City of Landrum v. Sarratt , 352 S.C. 139,572 S.E.2d 476, 478 (S.C. Ct. App. 2002) (One factor "to consider in determining if profanity constitutes fighting words [is] the presence of bystanders.").[8]
¶ 56 The majority also rejects the trial court's reasoning that the penis image conveyed fighting words because, according to *1116 the majority, the court incorrectly perceived the image as implying that L.P. was gay and more recent cases generally do not support treating references to sexual orientation as fighting words. That may be so, but the record is devoid of any evidence-such as accompanying statements by R.C.-from which a reasonable person standing in L.P.'s shoes would have taken the image as a reference to sexual orientation. And even assuming that the sexual orientation of such a person might be relevant, L.P.'s sexual orientation is unknown. Because of the barren record, gay bashing is only a straw man who suffers the predictable fate.
¶ 57 In any event, whether the image constituted fighting words is a question of law subject to de novo review. See Connick v. Myers , 461 U.S. 138, 150 n.10, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (" '[W]e are compelled to examine for ourselves the statements in issue and the circumstances under which they are made to see whether or not they ... are of a character which the principles of the First Amendment ... protect.' Because of this obligation, we cannot 'avoid making an independent constitutional judgment on the facts of the case.' ") (citations omitted). Given that the trial court's reasoning is not binding on appellate review, I decline to join the majority in dismembering it.
¶ 58 Returning, then, to whether the image showing L.P. engaged in fellatio constituted fighting words, based on the contextual factors discussed above, I am persuaded by the cases the Attorney General cites holding that the colloquial term "cocksucker" does not enjoy First Amendment protection under the fighting words doctrine. See City of Little Falls v. Witucki , 295 N.W.2d 243 (Minn. 1980) ; State v. Broadstone , 233 Neb. 595, 447 N.W.2d 30 (1989) ; City of Shaker Heights v. Marcus , No. 61801, 1993 WL 27676 (Ohio Ct. App. 1993).[9] Although the majority distinguishes these cases as also including threatening conduct, "threats are not, for First Amendment purposes, treated identically with either fighting words or expression tending to incite imminent lawless action." In re M.S. , 10 Cal.4th 698, 42 Cal.Rptr.2d 355,896 P.2d 1365, 1373 (1995). As well, threatening conduct was not present here.[10]
¶ 59 With all of this in mind, I would hold that the image R.C. created and circulated showing an ejaculating penis adjacent to L.P.'s mouth constituted fighting words. Therefore, I would deny it First Amendment protection and affirm the judgment of conviction.

The majority's characterization of the image as "cartoon-like" has no support in the record. And in any event, the law also gives legal effect to cartoons. See, e.g. , Yorty v. Chandler , 13 Cal.App.3d 467, 91 Cal.Rptr. 709, 711 (1970) ("A cartoon, of course, remains subject to the law of libel and, like any other form of depiction or representation, it may be found libelous if it maliciously presents as fact defamatory material which is false.") (citation omitted).

" 'Sexually exploitative material' means any photograph ... that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j), C.R.S. 2016.

Other cases to have addressed non-spoken fighting words include Texas v. Johnson , 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning), R.A.V. v. City of St. Paul , 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (cross burning), and World Wide Street Preachers' Fellowship v. City of Owensboro , 342 F.Supp.2d 634 (W.D. Ky. 2004) (picture of aborted fetus).

See Mary-Rose Papandrea, Student Speech Rights in the Digital Age , 60 Fla. L. Rev. 1027, 1037 (2008) ("Rather than harass their classmates in the locker room, hallways, and bathrooms, students engage in 'electronic aggression,' often in the form of malicious rumors or humiliating or threatening speech spread on social networking sites, e-mails, instant messages, chat rooms, text messages, and blogs."); see also People in Interest of T.B. , 2016 COA 151, ¶ 93 n.3, --- P.3d ---- (Fox, J., dissenting) ("The cell phone is the most direct and most widely used mode of communication between young people. Seventy-one percent of teens own a cell phone and seventy-six percent of teens have sent text messages-in fact, of teens with cell phones, twenty-five percent of teens aged twelve to fourteen text daily and fifty-one percent of teens aged fifteen to seventeen text daily.").

Based on this principle, which the majority recognizes, its statement that the image "did not, in fact, arouse an immediate violent response from L.P.," while factually correct, is legally inconsequential.

See also State v. Drahota , 280 Neb. 627, 788 N.W.2d 796, 804 (2010) ("[E]ven if a fact finder could conclude that in a face-to-face confrontation, [defendant's] speech would have provoked an immediate retaliation, [the recipient] could not have immediately retaliated. [He] did not know who sent the e-mails, let alone where to find the author."); but see Davidson v. Seneca Crossing Section II Homeowner's Ass'n , 187 Md.App. 601, 979 A.2d 260, 283 (2009) (Series of e-mails "consisted of the use of 'fighting words' " where they "regularly employed 'personally abusive epithets which ... [were] ... inherently likely to provoke violent reaction.' ") (alterations in original) (citation omitted).

In other contexts, the Supreme Court has found exceptions to First Amendment protections when the speech at issue involves minors. See United States v. Stevens , 559 U.S. 460, 471, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) ("[C]ategories of speech ... fully outside the protection of the First Amendment" include child pornography because the state has "a compelling interest in protecting children from abuse.").

Kathleen Hart, Sticks and Stones and Shotguns at School: The Ineffectiveness of Constitutional Antibullying Legislation as a Response to School Violence , 39 Ga. L. Rev. 1109, 1119 (2005) ("One researcher has found that peers witness approximately 85% of bullying episodes that occur at school. Bystanders may be active participants by encouraging other kids to fight, or passive participants by merely laughing and doing nothing, perhaps because they fear that they will be the bully's next victim.") (footnotes omitted).

These cases are not alone in treating some sexually derogatory statements as fighting words. See, e.g. , State v. Groves , 219 Neb. 382, 363 N.W.2d 507, 510 (1985) (holding that "fuckhead" and "mother fucker" are fighting words, not constitutionally protected speech).

The majority asserts that "more recent cases suggest that 'cocksucker' has lost its former incendiary quality." But the cases cited do not carry the weight that the majority places on them. For example, in People v. Pierre-Louis , 34 Misc.3d 703, 927 N.Y.S.2d 592, 595 (N.Y. Dist. Ct. 2011), the alleged fighting words were from voicemails, not face-to-face interaction. Similarly, in State v. Swoboda , 658 S.W.2d 24, 26 (Mo. 1983), the alleged fighting words were overheard by a neighbor, but the "conduct took place entirely on [the defendant's] own property and was not in any way directed towards the complainant." And in State v. McKenna , 415 A.2d 729, 731 (R.I. 1980), the defendant "addressed her remarks to a group of five men. She spoke to them as a group, not individually nor face-to-face." Finally, in ARMCO, Inc. v. United Steelworkers of America , No. 2002CA0071, 2003 WL 22300027, at *7 (Ohio Ct. App. 2003), the court was "unable to determine" if "Afro cock sucker" constituted fighting words.