FILED

04/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0211

DA 23-0211

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 85

CITY OF MISSOULA,

       Plaintiff and Appellee,

   v.

SCOTT ANTHONY CHARLIE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-22-197
Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Tammy Hinderman, Appellate Defender Division Administrator,
Michael Marchesini, Managing Appellate Defender, Helena,
Montana

       For Appellee:

          Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

          Keith Worthington, Interim Missoula City Attorney, Douglas
Schaller, Deputy City Attorney, Missoula, Montana

                Submitted on Briefs:  March 5, 2025

                        Decided:  April 29, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Anthony Scott Charlie[1] appeals the February 2023 order of the Montana Fourth Judicial District Court affirming his March 2022 judgment and sentence in the City of Missoula Municipal Court. We address the following restated issue:

> *Did the Municipal Court err by conducting a bench trial based on prior notice to the Defendant that failure to appear at the final pretrial hearing would constitute a waiver of jury trial?*

We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On July 26, 2021, Missoula City police officer Nathan Champa was dispatched to Caras Park in Missoula on a 911 report of a man threatening people with a knife. That morning, two men contracted by the City of Missoula (the City) were spraying for noxious weeds along the Clark Fork River below the carousel. They were using backpack sprayers filled by a pressurized tank mounted on an ATV. Charlie approached on a bicycle and confronted the men about the safety of the herbicide they were spraying, expressing concern that it was contaminating the river. He then began trying to disable the tank and cut the supply lines with a pocketknife. The men called police. When officers arrived, Charlie was uncooperative and physically resisted a pat-down search and arrest. Charlie was eventually tackled, tazed, and taken into custody.

---

[1] The case caption incorrectly lists Charlie's name as Scott Anthony Charlie, despite Charlie's testimony below that his name is Anthony Scott Charlie. To avoid confusion, we will keep the present caption as it has been used during the entirety of this case.

¶3     Charlie was later charged with five misdemeanors: (1) obstructing in violation of § 45-7-302(1), MCA; (2) resisting arrest in violation of § 45-7-301, MCA; (3) criminal mischief in violation of § 45-6-101(1), MCA; (4) disorderly conduct in violation of § 45-8-101(1)(a)(vii)-(ix) and (3), MCA (2019); and (5) criminal possession of drug paraphernalia in violation of § 45-10-103, MCA.[2]  As pertinent, the disorderly conduct charge was based on Charlie's alleged "waving a knife around in a public place creating a hazardous condition" with "numerous children and adults in the immediate area." He was arraigned, acknowledged he understood his trial rights, and pleaded not guilty to all offenses. Charlie was released on the condition that he appear at all scheduled hearings. The court set omnibus for September 21, 2021. Charlie failed to appear because he was in jail on another offense.[3]  Charlie appeared a week later at the rescheduled hearing. The court reset omnibus several times on defense motion.

¶4     On October 26, 2021, the day set for omnibus, Charlie appeared and defense counsel and the prosecutor filed a stipulated "Omnibus Memorandum," which each of them (but not Charlie) had signed and which, among other things, outlined the upcoming trial schedule. The memorandum noted that the final pretrial hearing was set for November 23, 2021, and the two-day trial was set to begin December 1, 2021. The memorandum included the following notice:

---

[2] This charge was based on discovery of a hypodermic needle that fell out of Charlie's pocket during his struggle with police.

[3] The record contains an unsigned, handwritten inmate request dated September 21, 2021, purportedly from Charlie indicating he was supposed to appear that day but was "not called to court."

**The defendant's failure to appear at the final pre-trial hearing or jury instruction hearing will constitute a waiver of jury trial.**

(Emphasis in original.) At defense request, the court reset the omnibus hearing for October 29, 2021. Following the October 29, 2021 omnibus hearing, which Charlie attended, the court issued an "Omnibus Hearing Memorandum" ordering the same hearing and trial schedule as the parties' October 26, 2021 stipulated Omnibus Memorandum. The court's memorandum included the following statement:

> *The court has notified the Defendant that non-appearance could result* in a warrant, *a waiver of right to jury* or a trial in absentia.

(Emphasis added.) That day, the court also issued an order releasing Charlie from jail on the condition he appear at all scheduled hearings.[4]

¶5     Charlie did not appear at the November 23, 2021 final pretrial hearing. Defense counsel offered no explanation for his absence. The City asked the Municipal Court to waive the scheduled jury trial and set the matter for a bench trial. Defense counsel did not object. Based on his failure to appear at the final pretrial hearing, the court waived Charlie's jury trial and set the previously-scheduled December 1, 2021 jury trial as a bench trial instead.

¶6     Charlie did not appear on December 1, 2021. Defense counsel again did not explain his absence. The prosecutor asked the court to try Charlie in absentia. Defense counsel did not object. The court agreed to proceed in absentia, and the parties made opening

---

[4] This condition, like the same condition in Charlie's July 2021 order of release, also stated that "[f]ailure to comply . . . could be cause for the Defendant's bond or release on own recognizance being revoked and an appearance or arrest warrant being issued."

4

statements. Afterward, the City examined, and defense counsel cross-examined, Officer Champa. About an hour into Champa's testimony, the court became aware that Charlie was absent because he was incarcerated on a separate offense. The court continued trial until 2 p.m. the next day when Charlie appeared in person.[5] After conferring with the parties, who agreed, the court decided to start the trial anew. The court then asked the parties if there were "any other matters to consider" prior to opening statements. Neither defense counsel nor Charlie raised concerns that they were proceeding to a bench trial, not a jury trial.

¶7 Officer Champa, repeating his testimony from the previous day, testified for the City regarding Charlie's July 2021 arrest and subsequent charges. The two men spraying weeds at the park also testified about their interactions with Charlie and his conduct with law enforcement that day. Defense counsel cross-examined all three City witnesses. At the close of the City's case-in-chief and on defense motion, the court dismissed the drug paraphernalia possession charge for lack of sufficient evidence.

¶8 Charlie testified in his defense. He said he confronted the men spraying because he thought the herbicide was a dangerous contaminant. He admitted he had his knife out and "was going to cut" the tank line, but eventually put the knife away because he did not want to further contaminate the area. Charlie admitted that officers asked him to place his hands on his head but said he did not comply because he was "emotionally charged" and busy

---

[5] Following Charlie's no-show on December 1, 2021, due to being incarcerated, the court issued an order to transport him from the Missoula County Detention Center to trial on December 2, 2021.

yelling to public onlookers about the environmental hazard. He denied that he physically resisted arrest.

¶9 The Municipal Court found Charlie guilty of the four remaining charges and later sentenced him to six-month suspended sentences on the obstruction, resisting arrest, and criminal mischief offenses, and a 12-month suspended sentence on the disorderly conduct offense, with all sentences to run consecutively to each other.[6] Pursuant to § 3-6-110, MCA, Charlie appealed his conviction to the Fourth Judicial District Court, asserting numerous errors.

¶10 At oral argument on his district court appeal, and without previously briefing the issue, Charlie raised a "new argument" not raised at trial. For the first time, he asserted that the Municipal Court erroneously waived his jury trial because he was ultimately sentenced to 12 months for disorderly conduct, which, under *Salsgiver*, made the offense a "serious" offense requiring a knowing, intelligent, and voluntary waiver.[7] The District

---

[6] The Municipal Court also imposed various fines and costs, as well as restitution for injuries Officer Champa sustained during the arrest. Restitution is not at issue on appeal.

[7] More specifically, Charlie asserted that he was "arraigned on a petty disorderly conduct," but the Municipal Court imposed a 12-month sentence, and therefore, "under *Salsgiver*, either the waiver of the jury trial was improper," or his sentence was illegal. When Charlie was charged, § 45-8-101(1)(a)(viii), MCA (2019), provided that "a person commits the offense of disorderly conduct if the person knowingly disturbs the peace by creating a hazardous or physically offensive condition by any act that serves no legitimate purpose." The maximum punishment for this variant of disorderly conduct was 1 year in jail, a $1,000 fine, or both. Section 45-8-101(3), MCA (2019). However, when Charlie was arraigned in July 2021 on "§ 45-8-101(1)(a)(vii)-(ix) and (3), MCA," disorderly conduct, the court erroneously stated the maximum possible punishment as 10 days jail-time. Charlie was convicted and sentenced to 12 months on § 45-8-101(1)(a)(viii), MCA, disorderly conduct. Importantly, as the State notes, Charlie does not challenge his arraignment here and has abandoned any contention that his sentence was illegal because he was not properly arraigned.

6

Court, however, concluded that the parties' stipulated Omnibus Memorandum and the Municipal Court's Omnibus Hearing Memorandum both established that Charlie was informed that his failure to appear at the November 2021 final pretrial conference would result in a jury trial waiver. Charlie timely appeals only the portion of the District Court's order affirming his conviction on the offense of disorderly conduct.

## STANDARD OF REVIEW

¶11 On appeal from a municipal court, the district court acts as an intermediate appellate court. *City of Helena v. Broadwater*, 2014 MT 185, ¶ 8, 375 Mont. 450, 329 P.3d 589. In its appellate capacity, the district court is confined to review of the record and questions of law. *Broadwater*, ¶ 8 (citing § 3-6-110, MCA). When reviewing the decision of the district court, we do so as if the appeal had originally been filed in this Court, applying the appropriate standard of review. *City of Billings v. Nelson*, 2014 MT 98, ¶ 15, 374 Mont. 444, 322 P.3d 1039.

¶12 We review de novo a lower court's conclusions of law and interpretations of the Constitution, and our review of constitutional questions is plenary. *City of Kalispell v. Salsgiver*, 2019 MT 126, ¶ 11, 396 Mont. 57, 443 P.3d 504.

¶13 The common law plain error doctrine provides a narrow exception to the rule that failure to preserve an assertion of error generally waives the right to later appellate review. *State v. Finley*, 276 Mont. 126, 133-36, 915 P.2d 208, 213-14 (1995), *overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817; *State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72. We invoke the plain error

7

doctrine sparingly, and on a case-by-case basis. *State v. Reim*, 2014 MT 108, ¶ 29, 374 Mont. 487, 323 P.3d 880.

## DISCUSSION

¶14 *Did the Municipal Court err by conducting a bench trial based on prior notice to the Defendant that failure to appear at the final pretrial hearing would constitute a waiver of jury trial?*

¶15 Both the Montana Constitution and United States Constitution guarantee the criminally accused a right to trial by jury. Mont. Const. art. II, §§ 24, 26; U.S. Const. amends. VI, XIV; *Salsgiver*, ¶¶ 14-15; *Reim*, ¶ 30. A criminal defendant may waive a fundamental constitutional right, and to be effective, the waiver must be knowing, intelligent, and voluntary. *Reim*, ¶ 31; *State v. Mann*, 2006 MT 33, ¶ 14, 331 Mont. 137, 130 P.3d 164.

### A. Plain Error Doctrine.

¶16 Charlie did not object at any point during the Municipal Court proceedings to the waiver of jury trial or proceeding on a bench trial. Instead, he asserted for the first time on appeal to the District Court that the Municipal Court erroneously waived his right to a jury trial. Here, Charlie asks that we review and correct this error, i.e., reverse his conviction, under our common law plain error doctrine.

¶17 Generally, and except in very narrow circumstances, "[f]ailure to make a timely objection during trial constitutes a waiver of the objection." *See* §§ 46-20-104(2), -701(2), MCA (contemporaneous objection rule and statutory "plain error" exception); *Finley*, 276 Mont. at 133, 915 P.2d at 212-13 (§ 46-20-701, MCA, modeled after Fed. R. Crim. P. 52(a)). Accordingly, we do not generally address issues not preserved for appeal. *State v.*

*Akers*, 2017 MT 311, ¶¶ 10, 17, 389 Mont. 531, 408 P.3d 142 (because it is "fundamentally unfair" to hold a lower court in error on an issue it never had an opportunity to consider). However, we may review and correct the violation of a constitutional right, regardless of whether the alleged violation was objected to below. *Finley*, 276 Mont. at 134-35, 137-38, 915 P.2d at 213-16. But, given the legislature's intent to limit appellate review of unpreserved errors, *see* § 46-20-701(2), MCA, we invoke the common law plain error doctrine only to remedy a manifest miscarriage of justice and only under extraordinary circumstances. *Trujillo*, ¶ 6; *State v. Wilkins*, 229 Mont. 78, 80-81, 746 P.2d 588, 589 (1987); *State v. Cole*, 2025 MT 18, ¶ 6, 420 Mont. 231, 562 P.3d 1065 ("[t]he purpose of plain error review is to correct error not objected to at trial but that affects the fairness and integrity of the proceedings").

¶18    We may, in our discretion, reverse a lower court decision for "plain error" upon an affirmative showing that (1) the error affected a fundamental constitutional right and (2) failure to review and correct the error would result in a manifest miscarriage of justice or otherwise undermine the fundamental fairness of the proceedings or compromise the integrity of the judicial process. *See Akers*, ¶¶ 10, 17; *Cole*, ¶ 6; *State v. George*, 2020 MT 56, ¶¶ 5-14, 399 Mont. 173, 459 P.3d 854; *Finley*, 276 Mont. at 137, 915 P.2d at 215.[8] The appealing party has the burden to establish reversible plain error. *See Akers*, ¶ 20;

---

[8] *See also State v. Miller*, 2022 MT 92, ¶ 10, 408 Mont. 316, 510 P.3d 17; *State v. Abel*, 2021 MT 293, ¶ 4, 406 Mont. 250, 498 P.3d 199 (asserting the standard slightly differently to include a separate required showing of "a plain or obvious error"). *Accord State v. Tadewalt*, 2010 MT 177, ¶ 20, 357 Mont. 208, 237 P.3d 1273 ("[a] prerequisite to plain error review is that it be plain that there was error at trial"); *Finley*, 276 Mont. at 134, 915 P.2d at 213 ("doctrine of plain error [is meant] to correct *obvious*, fundamental, constitutional, or substantial errors" (emphasis added)).

*State v. Gunderson*, 2010 MT 166, ¶ 100, 357 Mont. 142, 237 P.3d 74; *State v. Favel*, 2015 MT 336, ¶ 27, 381 Mont. 472, 362 P.3d 1126 (unlike where an assertion of error was preserved, and the State has the burden to show it was harmless). Accordingly, the appellant must do more than merely assert plain error or simply request plain error review. *George*, ¶ 5 (citing *State v. Daniels*, 2019 MT 214, ¶ 31, 397 Mont. 204, 448 P.3d 511; *State v. Norman*, 2010 MT 253, ¶ 17, 358 Mont. 252, 244 P.3d 737). Instead, the appellant must "firmly convince" this Court that, under the totality of circumstances, the alleged error is so plain and prejudicial as to warrant reversing the lower court without that court ever having an opportunity to consider or correct it. *See George*, ¶ 5; *State v. Taylor*, 2010 MT 94, ¶ 17, 356 Mont. 167, 231 P.3d 79; *State v. Wilson*, 2011 MT 277, ¶ 28, 362 Mont. 416, 264 P.3d 1146 ("we will not reverse a decision for error unless the error was prejudicial"); *c.f.*, § 46-20-701(2), MCA (statutory plain error review requires showing that error was prejudicial).[9]

¶19 Charlie asserts that he is entitled to have this Court review and correct the Municipal Court's alleged constitutional error under the plain error doctrine and pursuant to *State v. Dahlin*, 1998 MT 113, 289 Mont. 182, 961 P.2d 1247, and *Reim*. The State counters that, under the circumstances here, the Municipal Court did not commit reversible plain error.

---

[9] *Accord Abel*, ¶ 4 (plain error requires showing that error "prejudicially affected the fundamental fairness or integrity of the proceeding"); *State v. Hogues*, 2024 MT 304, ¶ 18, 419 Mont. 322, 561 P.3d 1 (plain error requires showing of "error prejudicial to a fundamental constitutional right"); *Miller*, ¶ 10 n.2 ("[c]orrection of an unpreserved error as plain error fundamentally requires a showing" that the error "in fact resulted in substantial prejudice to the accused" (collecting cases)); *Favel*, ¶ 45 (McKinnon, J., specially concurring) (prejudice "permeates throughout" our plain error analyses).

¶20    In *Dahlin*, the defendant claimed for the first time on appeal that the trial court erroneously convicted him on a bench trial without obtaining a written waiver of his right to jury trial pursuant to statute and in violation of his Montana constitutional rights. *Dahlin*, ¶¶ 11, 15 (citing § 46-16-110(3), MCA (a jury trial may be waived "[u]pon written consent of the parties"), and Mont. Const. art. II, § 26 ("upon default of appearance or by consent of the parties expressed in such manner as the law may provide, all cases may be tried without a jury")).  Instead, the court relied only on the "oral representation" of his counsel that Dahlin consented to a bench trial. *Dahlin*, ¶¶ 5, 11.  The State asserted that Dahlin waived the issue because he did not raise it below or claim entitlement to review under § 46-20-701(2), MCA.  *Dahlin*, ¶¶ 12-13 (citing §§ 46-20-104 and -701, MCA). Notwithstanding, we considered the unpreserved assertion of error under the common law plain error doctrine.  *Dahlin*, ¶¶ 14-15 (concluding that the asserted error implicated a fundamental constitutional right and failure to review it "would leave unsettled a question as to the fundamental fairness of his trial").  We held that counsel's "oral representation" alone was not an effective waiver because it did not satisfy the express requirements of § 46-16-110(3), MCA, and the court thus erroneously waived Dahlin's jury trial without his written consent. *Dahlin*, ¶¶ 20, 24.  We therefore reversed Dahlin's conviction based on the plain constitutional error, i.e., violation of his Mont. Const. art. II, § 26, jury trial right. *Dahlin*, ¶¶ 18, 22-24.

¶21    In *Reim*, we again considered a defendant's unpreserved assertion that the trial court erroneously waived his right to jury trial without obtaining a written waiver pursuant to § 46-16-110(3), MCA, and our holding in *Dahlin*. *Reim*, ¶¶ 28-33.  There, Reim's counsel

filed a pretrial motion to vacate Reim's jury trial and set the matter for a bench trial, which the court granted. *Reim*, ¶ 21. Reim appeared with counsel at his bench trial, where the court noted the prior waiver. *Reim*, ¶ 23. Neither Reim nor his counsel questioned the waiver or objected to proceeding on bench trial. *Reim*, ¶¶ 23, 33. Because Reim asserted the same plain error as in *Dahlin*, we concluded that "the same result [was] required" in Reim's case and "exercise[d] plain error review" to determine whether the waiver violated his constitutional rights. *Reim*, ¶ 30.

¶22 However, unlike in *Dahlin*, we did not reverse under the plain error doctrine. First, unlike the "silent" record in *Dahlin*, the record in Reim's case contained a motion to vacate the jury trial and an order setting the matter for a bench trial, "signed by the attorney and filed with the court." *Reim*, ¶ 33. Moreover, neither Reim nor his attorney objected to proceeding before a judge and not a jury. *Reim*, ¶ 33. Finally, "through his silence at trial" and by "acquiesc[ing] to the trial being conducted, from beginning to end, by the judge," Reim had "ratified" the waiver. He thereby "actively participated in the alleged error he now contests." *Reim*, ¶ 34. Accordingly, we found no plain, reversible error under the totality of the circumstances. *Reim*, ¶¶ 32-34 (declining to follow Reim's "rigid reading of *Dahlin*").

¶23 More recently, in *Cole*, we again considered a defendant's unpreserved assertion that the trial court erroneously conducted a bench trial without obtaining a written waiver of his jury trial right in violation of Mont. Const. art. II, § 26. *Cole*, ¶¶ 5, 8. The State argued that the trial court did not commit plain error because, under the totality of the

circumstances, Cole's waiver was valid. *Cole*, ¶¶ 7, 10.[10]  First, we concluded that, although § 46-17-201(2), MCA, did not require a written waiver on Cole's misdemeanor offense, the Sixth Amendment and Mont. Const. art. II, § 24, still required that he waive his jury trial right knowingly and voluntarily. *Cole*, ¶¶ 8-9.[11]  In considering Cole's waiver, we noted that he (1) acknowledged his trial rights and understood them; (2) had an opportunity to confer with counsel, who informed the court that Cole wanted to proceed on bench trial, which Cole later confirmed in open court; (3) appeared at his bench trial, where "[i]t was clear . . . there was no jury and his guilt would be exclusively determined by the" judge; (4) testified in his own defense; and (5) never objected to proceeding on bench trial or otherwise asserted he wanted a jury trial. *Cole*, ¶ 10.  Instead, "only after being convicted did he attempt to get a second bite at the apple by belatedly asserting on appeal" that he did not waive his jury trial right. *Cole*, ¶ 10.  We held that, under the totality of the circumstances, Cole waived his right to jury trial and therefore was not entitled to reversal of his conviction under the plain error doctrine. *Cole*, ¶ 10.

¶24     Here, Charlie's asserted error (waiver by default of appearance) is slightly different than the asserted constitutional errors in *Dahlin*, *Reim*, and *Cole* (waiver not reduced to writing).  Nonetheless, Charlie's claimed error likewise implicates the fundamental right

---

[10] Notably, we did not step through the so-called "threshold" analysis under *Finley* to determine first whether Cole was entitled to plain error *review* of his unpreserved claim of error, but rather, we directly analyzed whether Cole had met his burden under the plain error doctrine for reversal of a plain constitutional error. *See Cole*, ¶¶ 6-10; *compare Favel*, ¶¶ 35-47 (discussing "threshold" versus "merits" analysis under plain error doctrine).

[11] Unlike in *Dahlin* and *Reim*, which involved felony offenses and challenges under § 46-16-110(3), MCA (written waiver required for felony offenses), Cole's case involved only misdemeanor PFMA. *See Dahlin*, ¶ 1; *Reim*, ¶ 20; *compare Cole*, ¶ 1.

to trial by jury and the waiver of that right. *See Salsgiver*, ¶¶ 14-18 (jury trial right guaranteed by Mont. Const. art. II, §§ 24, 26, and U.S. Const. amends. VI, XIV). And, as in *Dahlin*, *Reim*, and *Cole*, we exercise our discretion here to review Charlie's unpreserved assertion of constitutional error. However, our choice to *review* Charlie's claimed error does not mean that his conviction is necessarily *reversible*. *See Favel*, ¶ 40 (McKinnon, J., specially concurring) (the plain error doctrine is "a rule of reversibility," not "reviewability" (citation omitted)). To constitute reversible error, we must be "firmly convinced" that, under the totality of circumstances, the error was so plain and prejudicial that it denied Charlie a fair trial and resulted in a miscarriage of justice. *See Cole*, ¶ 6 (citing *George*, ¶ 5); *Akers*, ¶ 17 (citing *Favel*, ¶ 23).

**B. Charlie's Waiver by Failing to Appear.**

¶25 Charlie asserts that, under *Salsgiver*, he could not waive his Sixth Amendment right to jury trial on the disorderly conduct offense by simply failing to appear at the November 2021 final pretrial conference, as directed. He contends that the jury trial waiver was not: (1) knowing, because the stipulated Omnibus Memorandum and the Municipal Court's Omnibus Hearing Memorandum were insufficient to advise him that a failure to appear would waive his jury trial right; or (2) voluntary, because his failure to appear at the final pretrial conference was unexplained and neither he nor his counsel affirmatively consented to proceeding on a bench trial.

¶26 In *Salsgiver*, as a condition of release after arraignment on two misdemeanors, the defendant was ordered to appear at all proceedings in the matter and warned that failure to appear would result in a waiver of jury trial. The trial court also issued "notice" of an

14

upcoming omnibus hearing, which restated the warning. When Salsgiver failed to appear at the omnibus hearing, the trial court waived jury trial and set the matter for a bench trial. *Salsgiver*, ¶¶ 4-5. Before the scheduled bench trial, Salsgiver filed a motion through counsel for a jury trial, contesting the prior waiver, which the trial court denied. *Salsgiver*, ¶ 6. When Salsgiver appeared at his trial, his counsel renewed objection to the jury trial waiver and proceeding on bench trial. *Salsgiver*, ¶ 7. Salsgiver later appealed the denial of his motion for jury trial to district court, which affirmed the trial court, concluding that Salsgiver had "automatically waived" his Mont. Const. art. II, § 26, and Sixth Amendment jury trial rights by failing to appear. *Salsgiver*, ¶¶ 10, 27-28.[12]

¶27 On appeal from district court, we first held that, under Mont. Const. art. II, § 26, and associated case law, Salsgiver waived his jury trial right on both misdemeanor offenses by default of appearance. *Salsgiver*, ¶¶ 15, 20-21, 25 (Salsgiver failed "to counter a finding of waiver or to call into question his ability to comply with" the court's order and "never explained" his nonappearance). However, notwithstanding the valid Montana constitutional waiver, we held that Salsgiver's jury trial waiver on the "serious" PFMA misdemeanor offense—which carried a maximum punishment of greater than six months incarceration—was subject to separate review under the Sixth Amendment's knowing, intelligent, and voluntary waiver standard. *Salsgiver*, ¶¶ 16, 19, 25-27 (compared to

---

[12] We ultimately held that the district court erroneously affirmed Salsgiver's PFMA conviction based upon finding an "automatic waiver" and without conducting a Sixth Amendment knowing, intelligent, and voluntary waiver analysis. *Salsgiver*, ¶¶ 27-28.

Salsgiver's other "petty" offense, which did not have an associated Sixth Amendment jury trial right).

¶28 Under that standard, which considers the totality of circumstances, there is no presumption of waiver, and the State bears the burden to show a valid waiver by a preponderance of evidence. *Salsgiver*, ¶¶ 17-18, 28-29. The only evidence of waiver, however, was that Salsgiver failed to appear at his omnibus hearing. We held that Salsgiver's "knowledge of his release conditions and subsequent failure to appear" at his omnibus hearing could not "serve as *the sole basis*" for waiver of his jury trial right, especially since neither Salsgiver nor his counsel ever represented that Salsgiver wanted to waive his jury trial but, instead, filed a motion after his nonappearance specifically asking for a jury trial and openly objected to proceeding on a bench trial. *Salsgiver*, ¶¶ 29-30 (emphasis added). The State, therefore, failed to establish by a preponderance of the evidence that Salsgiver knowingly, intelligently, and voluntarily waived his Sixth Amendment jury trial right. *Salsgiver*, ¶ 29.

¶29 As a threshold matter, unlike Salsgiver, who properly preserved his assertion of constitutional error for appeal, Charlie did not preserve the issue and is therefore asking this Court to reverse his conviction under the common law plain error doctrine. Under this posture, Charlie must establish that the Municipal Court committed plain error resulting in a miscarriage of justice. *See Akers*, ¶ 20; *Gunderson*, ¶ 100; *Favel*, ¶ 27. Unlike in a case of a preserved assertion of unconstitutional waiver, like *Salsgiver*, where the State bears the burden of overcoming the presumption of no waiver by a preponderance of evidence, here, Charlie bears the burden to "firmly convince" this Court that the trial court committed

16

reversible plain error because his jury trial waiver was not knowing or voluntary, and he was therefore denied a fair trial. *See Cole*, ¶ 10. In both cases, we consider the asserted error under the totality of the facts and circumstances. *See Salsgiver*, ¶ 17; *Cole*, ¶¶ 6, 10.

¶30 Charlie claims that the October 26, 2021 stipulated Omnibus Memorandum—that his counsel signed and filed with the court on the same day as the hearing Charlie attended—did not put him on notice of the jury trial waiver consequences for failure to appear because he "did not sign it" and the memorandum "made no assertion" he "was aware of its contents." However, instead of claiming that his counsel never actually informed him of the waiver consequences, Charlie asserts only that *the record does not show* she "relayed" that information to him. Through the October 2021 stipulation, Charlie's counsel represented to the court that Charlie was advised of the trial schedule and that his nonappearance "**will constitute a waiver of jury trial**." We presume that Charlie was aware of his counsel's stipulation. *See State v. Nelson*, 251 Mont. 139, 141-42, 822 P.2d 1086, 1087 (1991) (citing *State v. Turlock*, 76 Mont. 549, 563, 248 P. 169, 175 (1926) ("[a]s a general rule the stipulation of an attorney respecting a cause in his charge will be presumed to have been authorized by his client")); § 37-61-401(1)(a), MCA (attorney's authority to bind client "by agreement filed with the clerk").

¶31 Charlie also claims that the Municipal Court's October 29, 2021 Omnibus Hearing Memorandum—memorializing the omnibus hearing Charlie attended and stating the court "notified" him there that his "non-appearance" at the upcoming scheduled hearing and trial "could result in a warrant, a waiver of right to jury or a trial in absentia"—did not definitively state that waiver *would* result. Charlie claims the court sent "mixed messages"

17

considering its prior orders of release stating that Charlie's failure to appear at any proceedings would result in revocation of his release or arrest. However, there was nothing ambiguous about the warning Charlie personally received at the omnibus hearing or the court's subsequent memorandum memorializing and restating that warning. The stipulated Omnibus Memorandum and the Municipal Court's Omnibus Hearing Memorandum confirm that Charlie was advised that failure to appear as directed would constitute a waiver of his jury trial.

¶32 Charlie also claims that there was no explanation for his absence at the November 2021 final pretrial hearing and no evidence he "made a conscious decision to miss that hearing." He insists that his regular appearance at prior hearings renders his failure to appear as directed at the final pretrial hearing an "unexplained" anomaly that could not have been a voluntary choice. However, Charlie offers no non-speculative reason for why he failed to appear, and therefore any conclusion that he did not "consciously" choose to miss the hearing would be pure conjecture.

¶33 Finally, Charlie asserts that he did not voluntarily waive a jury trial because neither he nor his counsel affirmatively represented that he did not want a jury trial. However, at the final pretrial hearing, Charlie's counsel did not object to the Municipal Court waiving jury trial upon Charlie's failure to appear as directed. Then, at his trial, neither Charlie nor his counsel objected to proceeding without a jury. Instead, Charlie testified in his defense with only the judge as his audience.

¶34 Charlie's failure to object to the waiver and proceeding on bench trial distinguishes his case from *Salsgiver*. First, unlike Salsgiver, who received only written warning, Charlie

18

received a personal warning from the Municipal Court at the omnibus hearing that his failure to appear at the upcoming final pretrial hearing or trial would result in a waiver of jury trial (as memorialized in the court's October 29, 2021 Omnibus Hearing Memorandum). Second, unlike Salsgiver, who immediately sought a jury trial after his default of appearance and continuously objected to the court's waiver, Charlie never contested the waiver and instead participated, without objection, in his bench trial. Charlie claims that he could not be expected to object to the waiver because "no one mentioned" it and he was therefore "not even aware" that he had waived his jury trial right. We find this claim unpersuasive given that Charlie appeared in person at his December 2, 2021 trial, where it was clear there was no jury and should have been apparent the judge would exclusively determine his guilt. *See Cole*, ¶ 10. Unlike in *Salsgiver*, where there was only tenuous evidence of waiver which the defendant continuously contested, here, there is evidence that Charlie knowingly and voluntarily waived his jury trial and went on to participate actively in his bench trial without objection.

¶35    As in *Reim* and *Cole*, we are not "firmly convinced" that the Municipal Court committed plain error here or that Charlie's conviction was a manifest miscarriage of justice warranting reversal. Although, in both cases, defense counsel represented to the trial court that the defendants wanted to proceed without juries, which did not happen here, Reim and Cole both essentially "ratified" the jury trial waivers by appearing in court, actively participating in their bench trials, and never objecting to proceeding before a judge and without a jury. *Reim*, ¶¶ 33-34; *Cole*, ¶ 10. As in *Reim* and *Cole*, we decline to hold the Municipal Court in error for conducting a bench trial where Charlie appeared, testified,

19

and never contested the prior jury trial waiver—i.e., for an alleged error that Charlie "now contests," but in which he "actively participated." *Reim*, ¶ 34; *Cole*, ¶ 10. We are not "firmly convinced," especially considering Charlie's testimony that he used a knife during the Caras Park incident, that his conviction on the offense of disorderly conduct was fundamentally unfair or a miscarriage of justice.

## CONCLUSION

¶36 We hold that, under the totality of the circumstances, Charlie's failure to appear at his final pretrial hearing as directed was a knowing and voluntary waiver of his right to jury trial. Accordingly, we hold that the Municipal Court did not commit plain error when it conducted a bench trial upon Charlie's waiver by default of appearance. Reversal of Charlie's conviction under the plain error doctrine is therefore not warranted in this case.

¶37 Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON