FILED

11/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0251

DA 24-0251

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 262N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

FRANKIE SAMUEL PRADO,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 23-35
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        James M. Siegman, Attorney at Law, Jackson, Mississippi

     For Appellee:

        Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

        William Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  October 8, 2025

Decided:  November 12, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Frankie Samuel Prado appeals his August 2023 conviction on jury verdict in the Montana Twenty-First Judicial District Court, Ravalli County. This appeal presents recurring questions about the scope of confrontation protections when testimonial statements arise through recorded communications and when background testimony risks indirectly bolstering another witness's credibility. We affirm.

¶3 In February 2023, the State charged Prado with numerous offenses after an altercation involving his girlfriend, Belen Ruiz, and two teenage witnesses, C.G. and G.V. Pretrial, the State narrowed the charges to one count each of (1) attempted deliberate homicide, (2) partner/family member strangulation, (3) misdemeanor operating a vehicle with a BAC of .08 or more, and (4) misdemeanor violation of a no-contact order.

¶4 At trial, multiple witnesses testified to a violent domestic altercation followed by Prado driving his car toward C.G. and hitting him. C.G. and G.V. testified that Prado assaulted and choked Ruiz during a drunken fight and that they intervened repeatedly until Prado threatened to get a gun, prompting them to flee with Ruiz. The responding police officer observed Ruiz highly intoxicated, with visible facial injuries and blood on her

clothing. An investigating officer later documented tire marks and a cracked windshield consistent with C.G.'s account of being struck by Prado's car.

¶5 Prado's neighbors corroborated the boys' accounts, reporting loud yelling, a crash, and a woman shouting, "you hit him with the car!" C.G. and G.V. testified that Prado drove directly at C.G., striking him at low speed. Emergency responders found C.G. anxious and hyperventilating but without serious injury. C.G. later reported headaches and dizziness; a physician diagnosed mild bruising and abrasions. C.G.'s mother, Cassandra LaQue, testified that C.G. appeared frightened and "manic."

¶6 Prado denied driving, claimed the boys "jumped" him, and refused a voluntary blood draw. A blood draw, obtained upon a warrant, later showed a .094 BAC. After arresting Prado, the responding officer personally served him in jail that night with a standing no-contact order prohibiting him from contacting Ruiz. Nonetheless, Prado placed repeated unanswered calls to Ruiz, eventually reaching her upon using another inmate's account. The jail recorded this call. Over Prado's objections, the District Court admitted a redacted version of the call. Ruiz moved out of state and did not appear for trial.

¶7 The jury found Prado guilty of attempted deliberate homicide, operating a vehicle with a BAC of .08 or higher, and violating a no-contact order. The jury acquitted Prado of partner/family member strangulation. Prado appeals, arguing that the District Court violated his constitutional right to confront Ruiz by allowing the State to present the recorded jail call. And, though he did not object below, Prado argues the court committed

3

reversible plain error in allowing LaQue to vouch for C.G.'s credibility. We will discuss additional trial testimony as needed below.

**Issue 1: Did the Admission of the Recorded Jail Call Violate Prado's Right to Confrontation?**

¶8    Under *Crawford v. Washington*, 541 U.S. 36, 126 S. Ct. 1354 (2004), and *State v. Tome*, 2021 MT 229, 405 Mont. 292, 495 P.3d 54, testimonial statements by an unavailable declarant are inadmissible unless the defendant had a prior opportunity for cross-examination. Prado contends that Ruiz's statements in the recorded jail call were testimonial, and their admission violated the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution. The State asserts the statements were non-testimonial. A statement is testimonial if an objective person in the declarant's position would reasonably expect it to be used in the prosecution of a crime. This Court has recently reiterated that a statement is testimonial and inadmissible without opportunity for cross-examination under the Confrontation Clause if its primary purpose, as discerned by an objective witness, is to establish or prove past events potentially relevant to later criminal prosecution. *State v. Strommen*, 2024 MT 87, ¶ 18, 416 Mont. 275, 547 P.3d 1227. We review alleged violations of this right de novo. *Strommen*, ¶¶ 15, 17.

¶9    Here, the statements were made during a recorded phone call from jail while Prado was incarcerated on the charged offenses. The State claimed the jail phone call was admissible for two purposes: as substantive evidence of Prado's violation of the no-contact order and as evidence of Prado's admissions, including that he "chased [C.G.] down." The

4

primary grounds for Prado's objection was that Ruiz's side of the conversation ("you strangled me" and "you hit the kid") was testimonial without opportunity for cross-examination. The District Court agreed, ordering the State to redact those statements. Prado also asked to exclude Ruiz's statements that Prado "fucked [her] up" and she had a "bruised lip" and "lump on her head." The State claimed they were necessary for context and not accusatory. The District Court agreed, and the jury heard those portions of the recording. Although Prado suggested the court offer a limiting instruction under M. R. Evid. 105 for some of Ruiz's statements in that call, he did not ask for instruction on the statements he alleges were erroneously admitted here.

¶10 Constitutional error is subject to the harmless error analysis outlined in *State v. Van Kirk*, 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735, and *State v. Mercier*, 2021 MT 12, ¶ 31, 403 Mont. 32, 478 P.3d 1159. The alleged error here is trial error, not structural error. *Mercier*, ¶¶ 31-32. Even if we assume for the sake of argument that Ruiz's statements were testimonial and their admission was error, we find the error harmless beyond a reasonable doubt. *Van Kirk*, ¶ 47. Our de novo review of the record confirms that the District Court did not violate Prado's confrontation rights by admitting his redacted jail call with Ruiz.

¶11 After redaction, Ruiz's remaining statements were not testimonial and were admitted for the limited purposes of identifying her as the subject of the protective order and providing context for Prado's own admissible admissions. Prado's admissions in the recorded conversation—particularly his description of chasing C.G.—were substantial and voluntary. The victim, C.G., testified at trial subject to full cross-examination. C.G.'s

5

testimony did not depend on Ruiz's out-of-court statements for its credibility or factual basis. Multiple eyewitnesses—C.G., G.V., and two neighbors—independently described Prado's conduct; physical evidence (the cracked windshield, tire tracks, and blood patterns) aligned with witness accounts; and Prado's .094 BAC independently established the DUI offense. The State's proof of attempted deliberate homicide did not depend on Ruiz's recorded remarks, which were tangential to the offense against C.G. Given the overwhelming evidence in the record, including Prado's own admissions, admissible under M. R. Evid. 801(d)(2)(A), and C.G.'s testimony, any error in admitting Ruiz's side of the jail call conversation was harmless beyond a reasonable doubt.

**Issue 2: Did Admission of C.G.'s Mother's Testimony Regarding C.G. Violate the Rule Against Credibility-Boosting Testimony?**

¶12 Ahead of C.G.'s testimony, the State called his mother, LaQue, who testified that C.G. was diagnosed with bipolar disorder, autism, ADD and ADHD, and other nonspecific cognitive delays. She explained that C.G.'s diagnoses lead to processing delays and struggles with communicating. Prado claims this testimony impermissibly boosted C.G.'s credibility. Prado did not object to LaQue's testimony at trial.

¶13 This Court generally does not review unpreserved assertions of error on appeal. We may, however, review and reverse a constitutional error under the plain error doctrine. *City of Missoula v. Charlie*, 2025 MT 85, ¶¶ 16-18, 421 Mont. 403, 567 P.3d 922. Plain error review is reserved for extraordinary cases in which failing to review the alleged error would compromise the integrity of the judicial process or leave unsettled questions of fundamental fairness. *Charlie*, ¶¶ 16-18. This Court therefore applies it sparingly and only

6

when the record shows a substantial risk that an unobjected-to error affected the verdict. Prado bears the burden to "firmly convince" this Court that reversible plain error occurred. *Charlie*, ¶¶ 16-18. Our review of the record shows Prado has not met this high burden.

¶14 LaQue's testimony was limited in scope. She testified only to C.G.'s various diagnoses and the resulting communication limitations. Importantly, Prado fully cross-examined LaQue—inquiring into C.G.'s other possible disorders and his temperament, including whether C.G. became angry, agitated, stubborn, or uncooperative when overstimulated or overarroused. Prado likewise fully cross-examined C.G., impeaching his credibility by, among other things, eliciting admissions that he was under the influence of drugs and alcohol that night and, in fact, could become angry, agitated, and lash out due to his conditions. Instead of boosting C.G.'s credibility, LaQue's testimony contradicted C.G.'s testimony, undermining it in many respects. Prado was able to argue that C.G. was unreliable and prone to misperception.

¶15 The defense strategy at trial included the full cross-examination of LaQue and C.G. and the full utilization of C.G.'s testimony. Accordingly, plain error review is not warranted here. LaQue's testimony described C.G.'s communication limitations without offering an opinion on his honesty or the reliability of his account; instead, LaQue provided limited background on C.G.'s communication style due to his various diagnoses. She gave no opinion that C.G. was credible or that his testimony should be believed. While prosecutors must avoid eliciting "credibility-boosting testimony," *State v. Byrne*, 2021 MT 238, 405 Mont. 352, 495 P.3d 440, LaQue's statements merely aided the jury in assessing a witness's demeanor and comprehension. Because defense counsel then used the same

7

diagnoses to impeach C.G. and suggest bias or misperception, the record shows no manifest injustice warranting reversal under the plain error doctrine, as the defense's tactical use of the facts mitigated any potential error.

¶16 Under *Crawford*, *Tome*, *Van Kirk*, *Charlie*, and the United States and Montana Constitutions, the District Court's rulings fall within settled law. Any arguable constitutional or evidentiary error was harmless beyond a reasonable doubt. The record shows a fair trial, adequate safeguards for constitutional rights, and a verdict supported by substantial evidence. We therefore affirm.

¶17 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE